IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, SURFRIDER FOUNDATION, AND PACIFIC ENVIRONMENT,<br><br>  Plaintiffs,<br><br>  v.<br><br>LISA JACKSON, in her official capacity as Administrator of the United States Environmental Protection Agency; the ENVIRONMENTAL PROTECTION AGENCY; ROBERT J. PAPP, in his official capacity as Commander of the United States Coast Guard; and the UNITED STATES COAST GUARD,<br><br>  Defendants. | No. C 12-01920 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

**INTRODUCTION**

In this action brought under Section 7(a)(2) of the Endangered Species Act, defendants move to dismiss claim one of the complaint pursuant to FRCP 12(b)(6). This order agrees that the Act imposes a duty of consultation but holds that the duty to consult is adequately honored under the regulations issued by Environmental Protection Agency. For the following reasons, defendants' motion is **GRANTED**.

**STATEMENT**

The complaint in this action was filed by the Center for Biological Diversity, Surfrider Foundation and Pacific Environment against Environmental Protection Agency its administrator

Lisa Jackson and United States Coast Guard and its commander Robert J. Papp.  Claim one names only Environmental Protection Agency as defendant.  Defendants seek to dismiss only claim one of the complaint.  Plaintiffs allege in claim one EPA's listing of chemical dispersants on the National Contingency Plan Product Schedule triggers a duty, on the part of EPA, to consult pursuant to Section 7(a)(2) of the Endangered Species Act.

The coastal waters of California are host to endangered species and their critical habitats including black abalone, loggerhead sea turtles and leatherback sea turtles.  The 2010 Deepwater Horizon oil spill in the Gulf of Mexico provided new information that dispersant use may harm listed species or critical habitats.  There is not yet long-term data available from Deepwater Horizon but available information indicates dispersants are toxic to aquatic organisms.  Marine Fisheries Service has identified the use of dispersants may be detrimental to jellyfish.  Because jellyfish are a primary constituent element to the critical habitat of the leatherback sea turtle; dispersant use would have a negative effect on the leatherback's critical habitat (Compl. ¶ 84–98).

In the event of an oil spill, the federal government's duties are set forth in the Clean Water Act.  Within the executive branch, oil spill removal responsibility has been delegated to EPA and Coast Guard.  All removal must be conducted pursuant to the National Contingency Plan.  The Clean Water Act requires that the NCP shall include a product schedule.  The product schedule, at the time of the filing of the complaint, listed seventeen dispersants including Corexit 9500A and 9527A, both which were used in Deepwater Horizon.  Currently, there are eighteen dispersants listed (Opp. 18).  EPA maintains and updates the product schedule.  The Code of Federal Regulations sets forth the process for maintaining the product schedule and the process for adding products to it.  40 C.F.R. 300.905(a) and 300.920.

In addition to the NCP, the Clean Water Act requires the development of area and regional contingency plans.  Regional and area response teams address the "desirability of using appropriate dispersants . . . listed on the NCP product schedule."  40 C.F.R. 300.910(a).  Generally, only products listed in a preauthorization plan are utilized in a spill situation.  *Ibid.*

The regulations provide for limited exceptions if there is a threat to human life or the spill occurred in an area not covered by a contingency plan. 40 C.F.R. 300.910(b)(c).

Claim one alleges EPA's listing of chemical dispersants on the product schedule triggers a duty, on the part of EPA, to consult pursuant to Section 7(a)(2) of the Endangered Species Act. Defendants seek to dismiss claim one as barred by the statute of limitations and for failure to state claim pursuant to FRCP 12(b)(6).

**ANALYSIS**

Section 7(a)(2) of the Endangered Species Act provides that

> [e]ach Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency. . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species. . . .

The Clean Water Act directs the President to "prepare and publish a National Contingency Plan for removal of oil and hazardous substances." 33 U.S.C. 1321(d)(1). The NCP must "provide for efficient, coordinated, and effective action to minimize damage from oil and hazardous substance discharges, including containment, dispersal, and removal of oil and hazardous substances." 33 U.S.C. 1321(d)(2). Pursuant to Section 1321(d)(2)(G), the NCP shall include a product schedule prepared in cooperation with the States, identifying:

> (i) dispersants, other chemicals, and other spill mitigating devices and substances, if any, that may be used in carrying out the Plan,
>
> (ii) the waters in which such dispersants, other chemicals, and other spill mitigating devices and substances may be used, and
>
> (iii) the quantities of such dispersant, other chemicals, or other spill mitigating device or substance which can be used safely in such waters,
>
> which schedule shall provide in the case of any dispersant, chemical, spill mitigating device or substance, or waters not specifically identified in such schedule that the President, or his delegate, may, on a case-by-case basis, identify the dispersants, other chemicals, and other spill mitigating devices and substances which may be used, the waters in which they may be used, and the quantities which can be used safely in such waters.

3

The President has delegated his authority to establish and implement the NCP to EPA, Coast Guard and other federal agencies. The NCP regulations, promulgated by EPA, provide for oil-spill contingency planning at the national, regional and area level.

Plaintiffs contend the mere listing of a dispersant to the product schedule triggers a consultation requirement under the ESA. The order disagrees and holds that the duty to consult arises only at the plan or implementation stage.

This issue turns on whether or not the NCP regulations properly implement the duty to consult pursuant to Section 7 of the ESA. The regulations include two separate agency actions where the duty to consult may arguably be triggered: (i) at the point a dispersant is listed to the product schedule and (ii) at the point contingency planning occurs. Under the regulations, however, the duty to consult is specified to occur at the contingency planning stage and not the listing stage. As illustrated by 40 C.F.R. 300.210(c)(4)(i),

> Area Committees shall incorporate into each ACP a detailed annex containing a Fish and Wildlife and Sensitive Environments Plan that is consistent with the RCP and NCP. The annex shall be prepared in consultation with the USFWS and NOAA and other interested natural resource management agencies and parties. It shall address fish and wildlife resources and their habitat, and shall include other areas considered sensitive environments in a separate section of the annex, based upon Area Committee recommendations. The annex will provide the necessary information and procedures to immediately and effectively respond to discharges that may adversely affect fish and wildlife and their habitat and sensitive environments, including provisions for a response to a worst case discharge. Such information shall include the identification of appropriate agencies and their responsibilities, procedures to notify these agencies following a discharge or threat of a discharge, protocols for obtaining required fish and wildlife permits and other necessary permits, and provisions to ensure compatibility of annex-related activities with removal operations.

In the situation where there is no applicable contingency plan the implementing regulations still call for consultation. Pursuant to 40 C.F.R. 300.910(b), for spill situations not addressed by preauthorization plans

> the OSC, with the concurrence of the EPA representative to the RRT and, as appropriate, the concurrence of the RRT representative from states with jurisdiction over the navigable waters threatened by the release or discharge, and in consultation with the DOC and DOI natural resource trustees, when practicable, may authorize the use of dispersants. . . provided that the products are listed on the NCP Product Schedule.

4

Plaintiffs contend that, in addition to the consultations required by the regulation, consultation must also be occur at the listing stage. This order disagrees. The regulatory scheme properly implements Section 7 of the ESA because it provides for consultation before any dispersant is actually used. *First*, as detailed above, it is unlikely that merely adding a dispersant to the product schedule would result in environmental impact without any consultation. *Second*, at the listing phase, dispersant use is not authorized because "the listing of a product on the NCP Product Schedule does not constitute approval of the product." 40 C.F.R. 300.920(e). *Third*, the regulatory scheme expressly provides for consultation at the planning phase. Consultation need only be required once, not twice. The planning stage is the best point to conduct consultation because it can be directed at the specific geographic waters involved and tailored to benefit the species and habitats affected within those waters. Further, Chevron deference is owed to the agency's judgment in how to best implement the duty to consult. *Chevron v. Nat'l Resources Defense Council*, 467 U.S. 837, 844 (1984).

The case law also supports this interpretation of the statute. Plaintiffs' rely upon several decisions within our circuit that involve land-management plans to establish the product schedule, like land-management plans, trigger consultation even though the agency action is indirect (Opp. 12). *See Citizens for Better Forestry v. U.S. Dep't Agric.*, 481 F. Supp. 2d 1095 (N.D. Cal. 2007); *Pac. Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir. 1994); *Lane Country Audubon Soc'y v. Jamison*, 958 F.2d 290 (9th Cir. 1992). These decisions, however, all involved management plans that set forth criteria for future agency action. Here, at issue is the mere listing of a dispersant to a product schedule, which by itself, cannot lead to future use of the product. The contingency plans are what authorize use. The regulations provide for consultation prior to the use of a dispersant.

The Clean Water Act and implementing EPA regulations provide a framework for consultation during the contingency planning phase and not at the listing phase. Plaintiffs' claim consultation is triggered as well at the listing phase is an incorrect interpretation of the Act. Defendants motion to dismiss claim one pursuant to FRCP 12(b)(6) is **GRANTED**.

\*          \*          \*

This order need not determine if claim one is barred by the statute of limitations because based on statutory interpretation of the Endangered Species Act plaintiffs have failed to state a claim pursuant to FRCP 12(b)(6).

**CONCLUSION**

For the reasons stated, claim one is dismissed without leave to amend, any attempted amendment being futile.

The Court hereby orders that defendants shall file and serve the administrative record(s) by **OCTOBER 4, 2012**. The parties shall file a status report by **OCTOBER 19, 2012** indicating whether they are in agreement that the record is complete or whether any party intends to file a motion regarding the completeness of the record or the need for extra-record materials. By **NOVEMBER 16, 2012**, plaintiffs will file a motion for summary judgment pursuant to Civil Local Rule 7-2 and FRCP 56. Defendants will serve and file any opposition and counter-motion within **28 CALENDAR DAYS** of service of plaintiffs' motion. Plaintiffs will serve and file their combined opposition and reply within **FOURTEEN CALENDAR DAYS** after service of defendants' opposition and counter-motion. Defendants shall file their reply (not to exceed ten pages) within **FOURTEEN CALENDAR DAYS** of service of plaintiffs' combined opposition and reply. If, however, the parties are unable to reach agreement regarding the sufficiency of the administrative record, any motion regarding the completeness of the administrative record or the need for extra-record materials shall be filed by **NOVEMBER 2, 2012**. If any such motions are filed, the parties shall submit, within **FOURTEEN CALENDAR DAYS** after the Court's ruling on the motions, a proposed briefing schedule for cross-motions for summary judgment.

**IT IS SO ORDERED.**

Dated: September 4, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6